## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

LAYVETTE L. JONES,       )
     Plaintiff,         )
                       )      Civil Action No. 3:06-0623
v.                       )      Judge Wiseman/Brown
                       )
JO ANNE B. BARNHART,     )
Commissioner of Social Security,  )
     Defendant.        )

To:    The Honorable Thomas A. Wiseman, Jr., Senior Judge

## <u>REPORT AND RECOMMENDATION</u>

This is a civil action filed pursuant to 42 U.S.C. § 1383 (c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff supplemental security income (SSI), as provided under Title XVI of the Social Security Act (Act) as amended. The case is currently pending on plaintiff's motion for judgment on the administrative record. (Docket Entry No. 17). For the reasons stated below, the Magistrate Judge recommends that Plaintiff's motion for judgment be DENIED, and that the decision of the Commissioner to be AFFIRMED. Further, the Magistrate Judge Recommends that Plaintiff's request for remand pursuant to Sentence Six of 42 U.S.C. § 405(g) be DENIED.

## I. INTRODUCTION

Plaintiff protectively filed her application for SSI on October 15, 2002, alleging an onset of disability on May 1, 2001. (Tr. 64). In her application for SSI, Plaintiff alleged disability due to numbness of one side of the body, severe headaches, vision problems, balance and coordination

1

problems, depression and Hepatitis C (Tr. 65-67, 76). Plaintiff further complained of back pain and stomach problems. (Tr. 76). Plaintiff's application was denied initially and upon reconsideration. (Tr. 35-44). Plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ), which was held on November 24, 2004.[1] (Tr. 45, 662-684). On October 19, 2005, the ALJ issued a written decision finding that Plaintiff was not disabled. (Tr.14-29). The ALJ made the following findings:

1.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.   The claimant's hepatitis C, migraine headaches, lumbar and cervical degenerative disc disease, depression, post-traumatic stress disorder, and personality disorder are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920©.

3.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.   The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.   The claimant has the residual functional capacity for light work with no more than occasional moving the neck from side to side, occasional balancing, stooping, crouching and climbing ladders, ropes, or scaffolds performing simple (SVP 2 or less) routine repetitive tasks in a work environment not requiring food preparation.

6.   The claimant is unable to perform any of her past relevant work (20 CFR § 416.965).

7.   The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 416.963).

8.   The claimant has "a limited education." (20 CFR § 416.964).

---

[1] Plaintiff's brief incorrectly lists August 24, 2004 as the date on which the administrative hearing was held. (Docket Entry 18-1. Page 2).

2

9.      The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

10.     The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

11.     Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.18 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as hotel/motel maid (DOT # 323687-014), machine operator (DOT # 690685-154), and parking lot attendant (DOT # 915473-010) of which there are 2.6 million such jobs in the national economy.

12.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(Tr. 27-28).

On November 22, 2005, Plaintiff sought review from the Appeals Council.  (Tr. 12).  On February 2, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 9-11), thereby rendering that decision the final decision of the Commissioner.  This civil action was thereafter timely filed,[2] and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD [3] [4]

_____

[2]On May 15, 2006, the Plaintiff received a 30-day extension in which to file the present civil action.  (Tr. 7).

[3]Plaintiff has an extensive medical history.  The Commissioner has chosen to simply adopt the medical history facts as presented by the ALJ (Tr. 17-29) and has then further discussed the findings of consultative psychologist Janice D. Martin, Ph.D., and treating psychologist Jay S. Gorban, Ph.D., relevant to Plaintiff's statements of error.  Plaintiff has submitted only an "Outline of pertinent evidence" briefly summarizing Plaintiff's medical history in approximately three pages. (Docket Entry 18, Pages 3-6).  Therefore, the Magistrate Judge will also briefly summarize Plaintiff's medical history, going into further detail only as necessary for a more

3

Plaintiff is a 42 year old woman,[5] who, at the time of the ALJ's decision, was separated and living with her three minor children.  (Tr. 65-67, 667, 674).  She has past relevant work as a stocker. (Tr. 681).  The ALJ accepted Plaintiff's testimony that she had finished eighth grade.[6]  (Tr. 18).

Plaintiff reported that her daily activities included shopping, getting her children ready for school, driving the children to school, ironing, reading the bible, going to appointments, preparing light meals, performing light chores around the house, grocery shopping, doing homework with her children, talking on the phone daily with friends and associates, visiting with friends, attending church on a weekly basis and paying bills.  (Tr. 105-110, 674-675). Plaintiff asserts that because of pain, she had difficulty lifting, could not stand for more than 30 minutes or walk further than one block, could not sleep well, and could not sit for more than 30 to 45 minutes.  (Tr. 22, 675-676).

Plaintiff's medical history includes both physical and mental impairments.  The ALJ found that Plaintiff's hepatitis C, migraine headaches, lumbar and cervical degenerative disc disease,

---

complete analysis of Plaintiff's statements of error.  However, the Magistrate Judge has reviewed the entire record.  Further, in the future, both the Commissioner and the Plaintiff's attorney are urged to provide a more complete review of the medical record.

[4] The undersigned is less than enthusiastic about the "Medical Evidence" portion of the Government's brief which states only: "The Commissioner adopts the facts as presented by the ALJ (Tr. 17-29) and as set forth below." A considerable amount of space is then left blank, without setting anything forth. Again, the Government is urged to provide a more complete review of the medical record in the future.

[5]Plaintiff was born on October 6, 1964, making her 41 years old at the time of the ALJ's decision.  (Tr. 18).

[6]Plaintiff gave conflicting reports about her education, first stating that she completed a GED education and later saying she had never received a GED, then reporting she had completed the fifth grade but later changing that to the eighth grade while testifying at the hearing.  (Tr. 82, 328, 667).

4

depression, post-traumatic stress disorder, and personality disorder are considered "severe" (20 CFR § 416.920c) but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The following is a brief summary of Plaintiff's medical history.

On December 6, 2000, Plaintiff presented to Blanchfield Community Army Hospital (Blanchfield Hospital) complaining of numbness, achiness, and increased warmth in her left thigh, flank, leg, back and lower abdomen. (Tr. 197). On January 6, 2001, Plaintiff again presented to Blanchfield Hospital with the same complaints, adding that she was now having pain when standing too long and had numbness on the entire left side of her body from the shoulder down. (Tr. 195). On January 8, 2001, Plaintiff was diagnosed with degenerative disk disease at C4-5 and C5-6. (Tr. 293). On March 8, 2001, after an MRI, Plaintiff was found to have a central disc extrusion at C4-5 with moderate central spinal canal stenosis but not abnormal spinal cord signal. (Tr. 172, 290).

On April 30, 2001, Plaintiff was treated by Dr. Srivivasan Periyanayagam, also at Blanchfield Hospital. (Tr. 129-130). Dr. Periyanayagam found, after reviewing the March 8, 2001, MRI, that Plaintiff had a bulging disk at C4-C5 causing cervical radiculopathy and degenerative lumbar disc disease. (Tr. 130). Dr. Periyanayagam further found that the bulging disc could not explain the numbness that Plaintiff has been suffering from the chest wall down and that this may be psychosomatic. (Tr. 130). Dr. Periyanayagam prescribed Plaintiff Decadron, Flexeril, Celebrex, and physical therapy three times a week for four weeks, which she began approximately three weeks later, on May 23, 2001 and responded well to treatment. (Tr. 130, 182-189).

Over the next two years, Plaintiff was treated primarily for neck/back pain and headaches, for which she was prescribed, at various times throughout her treatment, Elavil, Maxalt, Valium, Imitrex, Celebrex and Midrin. (Tr. 131-298). Plaintiff attended physical therapy for lower back

5

spasms at Gateway Medical Center from August 6, 2002 through August 29, 2002 (Tr. 299-324)

It appears from the record that Plaintiff's treating physicians had difficulty in determining why Plaintiff suffered from some of the symptoms she complained of.[7] (Tr. 170-171). An MRI on June 20, 2003 revealed a mild broad based disc bulging at L4-5 and L5-S1. (Tr. 654).

Plaintiff also sought treatment at the Jennie Stuart Medical Clinic from August 7, 2003 to September 10, 2004 for back, neck and shoulder pain. (Tr. 376-505). During that span, Plaintiff received a series of epidural steroid injections in her spine. (Tr. 387, 402, 432, 445, 458, 472, 487, 502, 652-654). The injections were initially administered to her lumbar spine, ranging from L1-L5, though later injections were administered to her cervical spine at C6-C7. (*Id.*).[8] "Operative Reports" dated September 2 and 10, 2004 discuss a motor vehicle accident as a cause of the pain in Plaintiff's neck and shoulder. (Tr. 387, 402). Plaintiff reported that the injections were successful, at least temporarily, in relieving her symptoms. (Tr. 387, 402, 432, 445, 458, 472, 487, 502, 652-654).

Additionally, Plaintiff tested positive for Hepatitis C on September 12, 2002, and a liver biopsy in January 2003 subsequently showed the Hepatitis C to be chronic with mild to moderate activity and mild periportal fibrosis. (Tr.236). Treatment for Plaintiff's Hepatitis began in April 2003. (Tr. 574). Plaintiff responded moderately well initially, but treatment was suspended to allow Plaintiff to recover from side effects which included fatigue and a lowered white blood cell count. (Tr. 537, 530, 541, 522). On February 9, 2004, Dr. Babu Rao, a gastroenterologist, noted Plaintiff's

---

[7]In October 2001, Plaintiff's treating neurosurgeon stated that, "Persistent left-sided sensory deficits to include loss of pain and temperature and light touch. MRI of cervical spine is remarkable for C4-5 extrusion and DJD of the spine. Difficult to explain why patient is having these symptoms."

[8] When questioned at the Nov. 24, 2004 hearing by the ALJ about the injections, Plaintiff did not appear to distinguish between her neck and back pain, saying "it's all together."(Tr. 669).

6

nonresponse to treatment and discussed that finding with Plaintiff and discontinued the medication at that time. (Tr. 541). On February 19, 2004, Dr. Kyhn Khi examined Plaintiff, noting that Plaintiff had done "quite well" with the medication, but was also exhibiting a white blood cell deficiency. (Tr. 537). Plaintiff subsequently received shots to boost her white blood cell count. (Tr. 516, 517, 524, 525). Treatment eventually resumed and continued through September 2004. (Tr. 507).

Plaintiff's medical records also include a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" dated September 1, 2004 and signed by Cheryl Morse, a physician's assistant at Blanchfield Army Hospital. (Tr. 371-375).[9]

Plaintiff has been diagnosed with both depression and an anxiety disorder. (Tr. 215). Dr. Jay S. Gorban, Ph.D., has treated Plaintiff for several years. (Tr. 649, 656). Treatment for Plaintiff's mental afflictions included regular therapy and the prescription of antidepressants. (Tr. 140). During a medical examination in April 2002, Plaintiff reported that she was seeing a psychiatrist and was "doing well." (Tr. 156).

On December 21, 2004, Plaintiff's representative C. Martin Dunn sent a letter regarding Plaintiff's condition and the status of a pending MRI to ALJ Pickett. (Tr. 655). Attached to the letter was a "Medical Assessment of Ability to Do Work Related Activities (Mental)" form Dr. Gorban completed on Plaintiff's behalf. (Tr. 650-651). On this form, Dr. Gorban found that Plaintiff is moderately limited in her ability to remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without

---

[9] However, the ALJ found (Tr. 25-26), and the Magistrate Judge now finds, that this opinion does not come from an acceptable treating source. Moreover, the evaluation appears to have been completed by Plaintiff herself and then merely signed by Ms. Morse. Therefore, the Magistrate Judge need not discuss it at length here.

7

social supervision and interact with the general public. (Tr. 650-651). Dr. Gorban also found that Plaintiff is markedly limited in her ability to maintain attention and concentration for extended periods of time, to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workweek without interruptions, accept instructions and respond to criticism from supervisors and changes in the work setting. (*Id.*).

Additionally, Dr. Gorban wrote two letters (dated December 15, 2004 and January 27, 2005) on Plaintiff's behalf, briefly discussing her history of suffering from sexual abuse, drug use and health problems. (Tr. 649, 656). Dr. Gorban's letters noted that Plaintiff continues to be afflicted with nightmares, flashbacks and depression, though Plaintiff is benefitting from therapy. (*Id.*). Dr. Gorban also stated that Plaintiff will continue receiving therapy at his clinic "to work on her old and current issues." (*Id.*).

On December 16, 2002 Plaintiff underwent a psychological evaluation with Janice D. Martin, Ph.D. (Tr. 326-332). Dr. Martin's evaluation found that Plaintiff's mental status was not significantly altered by any depressive, anxious, or organic features. (Tr. 329-330). Further, Dr. Martin estimated Plaintiff's intelligence fell into the low average range, which is adequate for basic daily living. (Tr. 330). Dr. Martin reviewed Plaintiff's daily routine and opined that Plaintiff's difficulties likely stemmed predominantly from physical rather than mental health difficulties. (Tr. 330). Regarding work-related activities, Dr. Martin found that Plaintiff exhibited no significant limitations on her ability to concentrate on simple or relatively detailed instructions and that Plaintiff would likely be able to work with others without incident. (Tr. 331). Dr. Martin ultimately concluded that Plaintiff's mental health would present minimal to moderate difficulties in her ability to do engage in work-related activities. (Tr. 331).

8

On March 5, 2003, DDS consultative examiner Dr. Allison Y. Kirk, Ph.D. completed a Mental Residual Functional Capacity (RFC) assessment of Plaintiff. (Tr. 333-347). Dr. Kirk assessed that Plaintiff remained capable of performing simple and detailed tasks over the full workweek, sustaining an ordinary routine without special supervision, and making simple work-related decisions. (Tr. 335). Dr. Kirk further noted Plaintiff retained the ability to interact appropriately with co-workers, supervisors, and the general public. (TR. 335). Dr. Kirk found moderate limitations on Plaintiff's ability to complete a normal workday or workweek without interruptions from psychological symptoms, maintain extended concentration, and respond appropriately to changes in the work setting. (Tr. 333-335).

At the August 24, 2004 hearing, Plaintiff testified that she has difficulty lifting, could not stand for more than 30 minutes, could not sit for more than 30-45 minutes or walk further than one block. (Tr. 675-676). She further testified that she has trouble bending over, walks with a limp and has trouble turning her head. (Tr. 670,676). Plaintiff also testified to having persistent migraine headaches and suffering from hair-loss and flu-like symptoms due to the side-effects of her Hepatitis medication.(Tr. 673). Additionally, Plaintiff testified that her ability to perform household chores has decreased and that she sometimes has trouble handling stressful situations. (Tr. 674).

Also at the August 24, 2004, hearing, Vocational Expert ("VE") Rebecca Williams stated that Plaintiff would be unable to perform any of her past work due to her restrictions. (Tr. 681). The ALJ posed the VE a hypothetical question and asked her to consider: an individual of Plaintiff's age, education and work history, who retained the residual functional capacity for simple, routine, repetitive, light work that would not require climbing of ladders, ropes or scaffolds, crawling, only occasional climbing of ramps and stairs, occasional balancing, stooping, and kneeling, would not

involve food preparation, and would not require moving the neck more than what was demonstrated at the hearing. (Tr. 681). The VE stated that such an individual could perform the following jobs: hotel/motel maid, numbering 600,000 in the national economy; machine operator, numbering 1,500,000 in the national economy; and parking lot attendant, numbering 500,000 in the national economy.

The ALJ then posed the same hypothetical to the VE, changing only light work to sedentary work. The VE testified that such an individual could perform the following jobs: assembler, numbering 280,000 in the national economy; inspectors, numbering 67,000 in the national economy; general laborer, numbering 82,000 in the national economy. (Tr. 682). The VE testified that the assembler, inspector, and general laborer positions all have a sit/stand option. (Tr. 683). The VE stated that if the Plaintiff was unable to work a full eight hours per day five days per week, there would be no jobs available. (Tr. 683).

Plaintiff's representative, C. Martin Dunn, wrote to the ALJ again on August 9, 2005 (prior to ALJ's October 19, 2005 decision) stating that Plaintiff's condition continued to worsen, as Plaintiff had suffered a stroke and MRI's indicated that surgery on Plaintiff's back would be necessary. (Tr. 657).[10] Also, attached to this letter was a referral from Plaintiff's insurance provider, dated July 18, 2005, indicating that Plaintiff had been hospitalized for three days and that the condition in her cervical spine had grown worse and would require surgery. ( Tr. 659-661).

Plaintiff has also submitted new evidence to this Court which was not included in the original

---

[10] When asked by the ALJ at the Nov. 24, 2004 hearing if any other conditions prevented Plaintiff from working, Plaintiff responded, "they don't know whether [I had] a stroke or what it is." (Tr. 670). No other evidence has been submitted corroborating that Plaintiff did, in fact, suffer a stroke.

record. (Docket Entry 18-2, Pages 1-11). Consequently, this evidence will be considered in the context of whether a Sentence Six 42 U.S.C. § 405(g) remand is appropriate, but can not be weighed in reviewing the merits of the administrative decision. According to this new information, on a July 26, 2005 follow-up visit, Plaintiff was seen again by Dr. Periyanayagam. (Docket Entry 18-2, Pages1-11). Dr. Periyanayagam's examination revealed that Plaintiff was awake, alert, oriented, with no weakness in her extremities, and no difficulty in standing on either leg, though she continued to walk with the assistance of a quad cane. (Docket Entry 18-2, Page 1). Dr. Periyanayagam concluded that Plaintiff suffered from C5-C6 degenerative cervical disc disease causing cervical radiculopathy, noting her neck movements were accompanied with pain, but were not restricted and that her symptamology "seems to be getting better ."(*Id.*) .Dr. Periyanayagam noted that he would wait for myelopathy cleared up before performing surgery. (*Id.*).

Subsequent visits to Dr. Periyanayagam on Aug. 23 and Nov. 8, 2005 revealed Plaintiff could walk without difficulty but the condition in her neck was worsening, with her neck movements being painful and restricted. (Docket Entry 18-2, Pages 4-5). Dr. Periyanayagam recommended Plaintiff be scheduled for C5-C6 anterior cervical discectomy and fusion with plating. (Docket Entry 18-2, Pages 4-5). Surgery was performed on Nov. 30, 2005, and Dr. Periyanayagam's operative report noted that Plaintiff tolerated the procedure well and went to the recovery room in good condition. (Docket Entry 18-2, Pages 7-8). The doctor's discharge summary noted that Plaintiff did very well postoperatively and did not have any neck or arm pain. (Docket Entry 18-2, Page 9). A subsequent follow-up examination on December 9, 2005 showed the wound had healed well and Plaintiff's neck movements were not restricted or painful. (Docket Entry 18-2, Page 10). Finally, in a report dated Jan. 10, 2006 Dr. Periyanayagam noted that an x-ray taken the day before showed a fusion at C6-C7

11

level with good placement of screws and plates and that alignment appeared normal. (Docket Entry 18-2, Page 11).


### III. CONCLUSIONS OF LAW

#### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

#### B. Proceedings at the Administrative Level

The Claimant ultimately has the burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1) If the claimant is working and the work constitutes substantial gain activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[11] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the valuation process can be carried by relying on the medical vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics

_____

[11]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

13

identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id*. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423 (d)(2)(B).

### C. Plaintiff's Statement of Errors

Plaintiff alleges three errors in the ALJ's decision: (1) that the ALJ failed to give proper weight to the records and medical assessment of treating psychologist Jay S. Gorban, Ph.D.; (2) that the hypotheticals posed by the ALJ to the VE were insufficient because the limitations expressed by Dr. Gorban were not included; and (3) that Plaintiff is entitled to a remand pursuant to Sentence Six of 42 U.S.C. § 405(g) to consider new and material evidence, specifically an MRI report and additional treating notes by Dr. Periyanayagam, created after both the ALJ's and AC's decisions. The undersigned does not include this additional material when considering Plaintiff's first two statements of errors. These records were not submitted to the ALJ and as such, cannot be considered on judicial review except in support of Plaintiff's motion to remand under Sentence Six of 42 U.S.C. § 405(g). *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148-149 (6th Cir. 1996).

14

Plaintiff first argues that the ALJ failed to fully consider and discuss the medical assessment of Dr. Gorban and thereby erred in assigning less weight to Dr. Gorban's assessment. An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most capable of providing a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(I)-(ii). However, if there is medical evidence to the contrary, the ALJ is not bound by a physician's statement and may reject it if that statement is not sufficiently supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Sec'y of H.H.S.*, 25 F.3d 284 (6th Cir. 1994). In doing so, the ALJ must provide "good reasons" for discounting the opinion of a treating physician which are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating source's medical opinion and the reasons for that weight. Soc. Sec. Rul 96-2p, 1996 WL 374188, at *5; *Rogers v. Comm'r of Soc. Sec.* No. 05-4369 at 6 (6th Cir. May 24, 2007). A substantial premium is placed upon notice, and an imprecise or inadequate explanation of an ALJ's decision to give less credence to a treating physician's opinion(s) indicates a lack of substantial evidence, even if there is substantial justification for the judge's decision within the record. *Id.*

Dr. Gorban qualifies as a treating physician and his medical opinion is entitled to greater deference than that of a non-treating physician. Thus, Dr. Gorban's assessment that Plaintiff is essentially incapable of engaging in all work related activity is of controlling weight if it is consistent with other substantial medical evidence in the record. The ALJ found Dr. Gorban's assessment unpersuasive, however, finding it was not supported by medical evidence in the record, including Dr. Gorban's own records, and was also contradicted by the opinions of two other psychological

15

examiners. (Tr. 25-26, 331, 335).

Dr. Gorban concluded that Plaintiff is markedly limited in her ability to maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, complete a normal workweek without interruptions, and accept instructions (Tr. 650-651). However, as the ALJ noted, Plaintiff's treatment for her psychological afflictions has been fairly conservative in nature, using medication and periodic therapy sessions. (Tr. 25, 140, 156, 214). There is no indication of any intensive inpatient or outpatient treatment for her mental health problems. Further, Dr. Gorban noted that Plaintiff benefitted from this treatment and Plaintiff, by her own admission, was "doing well." (Tr. 156, 649, 656).

Dr. Janice Martin's assessment found no significant limitations on plaintiff's ability to attend to or concentrate on simple or detailed instructions and opined that Plaintiff had a Global Assessment Functioning (GAF) of 65-70. (Tr. 331). Moreover, Dr. Martin found Plaintiff capable of focusing on and following work-related directions. (*Id.*). Contrary to Dr. Gorban's findings, Dr. Martin opined that Plaintiff had only minimal to moderate difficulties in her ability to do work-related activities and that her inabilities to make personal and occupational adjustments were based more on her perceptions of her physical condition rather than actual mental health limitations. (*Id.*).

The findings of a second consultative examiner, Dr. Allison Kirk, were consistent with those of Dr. Martin. Dr. Kirk noted moderate difficulties with extended concentration, but ultimately concluded that Plaintiff is capable of performing simple and detailed tasks over a full workweek. (335). Dr. Kirk additionally found that Plaintiff can interact appropriately with co-workers and supervisors and is capable of "responding to infrequent changes and setting limited goals." (*Id.*).

Non-medical evidence also undermines Dr. Gorban's findings. Plaintiff attests to her ability

16

to cook, iron, do light housework, shop for groceries, read, watch television, drive an automobile, attend church weekly, pay bills and manage her finances.(Tr. 105-110, 330, 674-675). Additionally, Plaintiff is able to care for her children, cook for them, help them with their homework, helpp them get dressed and drive them to school.(*Id.*). Plaintiff also "related well with the Administrative Law Judge at the hearing and she answered questions quickly and appropriately...there was no obvious evidence of any significantly limiting mental or emotional problem demonstrated during the course of the hearing." (Tr. 25).

Contrary to Plaintiff's assertion, the ALJ did not fail to evaluate the evidence from Dr. Gorban. The Magistrate Judge is well aware of the importance, both to the claimant and subsequent appellate reviewers, of an ALJ's opinion sufficiently detailing his/her reasons for discounting a treating physician's opinion. Though the ALJ's decision failed to discuss Dr. Gorban's assessment in great length, it sufficiently stated specific reasons for discounting Dr. Gorban's assessment and was adequately precise in explaining how those reasons substantiated his decision. The undersigned finds that substantial evidence justifies the ALJ's decision to adopt the findings of Dr. Martin and Dr. Kirk over those of Dr. Gorban

Plaintiff next argues that the hypotheticals posed by the ALJ to the VE were insufficient because the previously discussed limitations expressed by Dr. Gorban were not included. It is undisputed that Plaintiff can not return to her past relevant work. Consequentially, her Residual Functional Capacity (RFC), age, education and past work experience are weighed to determine if she can perform other work. 20 C.F.R.§ 404.1520(e)-(g). If she cannot perform other work, she is, by regulation, disabled. (*Id.*) A determination of a claimant's RFC is based on all relevant medical evidence with the objective of defining the most a claimant can do despite that claimant's limitations.

17

20 C.F.R. §416.945 (a)(1),(3).

In determining whether a claimant is able to perform other work, an ALJ is justified in relying on the testimony of a VE's response to an ALJ-posed hypothetical so long as that hypothetical "accurately describes the plaintiff in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen* 35 F.3d 1027, 1036 (6th Cir.1994).

Here, a hypothetical posed to the VE by the ALJ asked whether there were a significant number of jobs available to an individual in Plaintiff's position, with the capacity to perform "simple, routine, repetitive...light work" (Tr. 681). The VE responded that such an individual could perform the following jobs: hotel/motel maid, numbering 600,000 in the national economy; machine operator, numbering 1,500,000 in the national economy; and parking lot attendant, numbering 500,000 in the national economy. (Tr. 681). The limitations incorporated into the ALJ's hypothetical accurately accounted for Plaintiff's mental limitations and reflected Dr. Kirk and Dr. Martin's opinions that Plaintiff retained the ability to remember and perform simple and detailed tasks. Further, the ALJ posed an additional hypothetical which asked if Plaintiff was "physically or mentally or a combination thereof unable to work a full eight hours a day, five days a week...would there be any jobs available?" (Tr. 683). This hypothetical indicated an awareness of Plaintiff's potential mental limitations and reflected Dr. Kirk and Dr. Martin's opinions that Plaintiff is capable of performing simple and detailed tasks over a full workweek. The hypotheticals posed by the ALJ adequately described Plaintiff in all significant and relevant aspects. The undersigned finds that the ALJ was justified in relying on the VE's testimony in making his determination.

18

Lastly, Plaintiff's final statement of error- that the ALJ failed to fully develop the record when Plaintiff's lay representative wrote a letter offering to produce additional new evidence and the ALJ failed to respond- blurs the line between a Sentence Six and a Sentence Four remand under 42 U.S.C. § 405(g). Thus, both will be addressed here.

In *Melkonyan v. Sullivan*, the Supreme Court clarified that with a Sentence Six remand "the district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination." 501 U.S. 89, 98 (1991). Instead, a Sentence Six remand is appropriate when "new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* By contrast, a Sentence Four remand does review the merits of the administrative decision and is appropriate when a defect in the administrative record is identified. *Faucher v. Sec'y of H.H.S.* 17 F.3d 171, 175 (6th Cir 1994).

The portion of Plaintiff's argument contending that the ALJ failed to fully develop the record is thus more appropriately addressed under a Sentence Four remand analysis. The ALJ does have a basic obligation to develop a full and fair record. *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051-1052 (6th Cir. 1983). This obligation is heightened when a claimant is without counsel, and in such instances, the ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* at 1052 (citing *Gold v. Sec'y of Health, Education and Welfare*, 463 F.2d 38, 43 (2d Cir. 1972). However, a claimant ultimately bears the burden of providing a complete record establishing disability. 20 C.F.R. § 404.1512; *Landsaw v. Sec'y of H.H.S.*, 803 F.2d 211, 214 (6th Cir. 1986).

Here, there is no indication that the ALJ neglected his duty to fully develop the record. The

19

administrative hearing was adequate in both length and detail of inquiry and the ALJ went so far as to hold the record open for an additional thirty days (with the possibility of an even longer extension upon request) after the hearing to allow Plaintiff to submit additional evidence.(Tr. 665). Furthermore, the ALJ did weigh the letter and additional evidence submitted by Plaintiff's representative on August 9, 2005, long after this thirty-day window had expired.(Tr. 24). The ALJ's duty to fully develop the record does not dismiss Plaintiff's obligation to present a complete record which demonstrates disability, nor does it equate to a de facto obligation by which the ALJ must seek out and request more evidence whenever a claimant suggests it might exist. Any additional evidence that Plaintiff wished to be considered should have been submitted, and there is no indication that the ALJ refused to weigh all evidence which was, in fact, submitted to him.

Also, Plaintiff's brief repeatedly emphasizes that she was represented by a lay representative at the administrative hearing and was unrepresented at the Appeals Council level. A claimant has the right to, but is not required to have, an attorney and inadequacies in representation may impose a duty for the ALJ to more scrupuosly develop the record. See *Duncan v. Sec'y of H.H.S.*, 801 F.2d 847, 855-856 (6th Cir. 1986); *Lashley*, 708 F.2d 1048, 1051-1052 (6th Cir. 1983). See generally *Arms v. Gardner*, 353 F.2d 197, 199 (6th Cir. 1965). However, there is no indication of prejudice to Plaintiff due to the lay advocate's representation. The undersigned notes that while Plaintiff's representative is a non-attorney, this representative is clearly familiar with disability hearings.[12] Regarding Plaintiff's lack of representation at the AC level, even if the Plaintiff had submitted evidence to the AC, this

_____

[12]Plaintiff's lay representative, C. Martin Dunn, of Martin, Dunn and Associates, is listed as a member of the National Association of Disability Representatives (NADR), an organization comprised of professional Social Security claimants representatives. See http://www.nadr.org/ for further information.

Court may not consider evidence first submitted to the AC after the ALJ's decision in a substantial evidence review. See *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 695-696 (6th Cir. 1993). Ultimately, the contention that the ALJ failed to adequately develop the record is meritless and a Sentence Four remand would be inappropriate if Plaintiff is, in fact, seeking one.

Plaintiff does, however, seek a remand pursuant to Sentence Six of 42 U.S.C. § 405(g) to consider new and material evidence. Remand for consideration of new and material evidence is appropriate only if the material evidence relates to the claimant's condition at the time of the administrative proceedings and if the claimant shows good cause for failing to submit the evidence during the administrative proceedings. 42 U.S.C. § 405(g); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996); *Oliver v. Sec'y of Health and Human Servs.*, 865 F.2d 709,712 (6th Cir. 1988); *Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Remand is not appropriate if the evidence is largely cumulative of evidence and opinions already present in the record. *Longworth v. Comm'r Soc. Sec.* 402 F.3d 591 (6th Cir. 2005).

Plaintiff asserts good cause for failing to produce the "new" evidence at the original proceeding..[13] Simply demonstrating that a test had not been performed until after the close of the administrative proceeding does not suffice as a showing of good cause, as a claimant must also show good cause for not undergoing the tests earlier. *Oliver v. Sec'y of H.H.S.*, 804 F.2d 964, 966 (6th Cir.

---

[13]Plaintiff's brief cites *Willis v. Sec'y of Health and Human Services*, 727 F.2d 551, 554 in support of a showing of good cause.(Docket Entry 18-1, Page 20) The quotation provided by counsel is nowhere to be found in *Willis*, nor could the Magistrate Judge locate the quotation elsewhere. Counsel is strongly urged to examine citations more thoroughly and ensure their validity before submitting work to this Court in the future.

21

1986).

A large portion of the new evidence submitted by Plaintiff- Dr. Periyanayagam's November 8, 2005 examination notes, his postoperative and discharge notes from November 30, 2005 and his December 9, 2005 and January 10, 2006 follow-up notes- is dated after the ALJ issued his decision on October 19, 2005. (Docket Entry 18-2, Pages 5-11). The nature of a follow-up examination and Dr.Periyanayagam's decision to perform surgery when he felt it was appropriate suffices to establish good cause for the Plaintiff's inability to produce this evidence before the close of the proceeding. *See Wilson v. Sec'y of H.H.S.,* 733 F.2d 1181 (6th Cir. 1984).

The remaining portion of the additional evidence submitted by Plaintiff- a July 13, 2005 MRI report, and Dr. Periyanayagam's July 26 and August 23, 2005 examination notes- is dated before the ALJ issued his decision on October 19, 2005. (Docket Entry 18-2, Pages 1-4). At the hearing on November 24, 2004, the ALJ notified Plaintiff's representative, C. Martin Dunn, that the record would be kept open for an additional 30 days to allow additional evidence to be presented. (Tr. 665). There is thus good cause for Plaintiff's inability to submit this evidence within this 30 day window because the examinations could not have been performed within that window. Plaintiff repeatedly contends that it was incumbent upon the ALJ to request this additional evidence before issuing his decision, and that his failure to do so suffices as good cause for the evidence's not being included in the record. As previously noted, however, the ALJ's duty to fully develop the record does not displace Plaintiff's obligation to submit a complete record, particularly where the ALJ offered to keep the record open upon Plaintiff's request. There is no indication that the ALJ would have rejected evidence provided to him by Plaintiff before issuing his decision. Further, the ALJ was aware of the results of July 2005 MRI and discussed them in his decision. As such, the ALJ` allowed additional evidence to be included

22

in the record well beyond the 30 day window following the administrative hearing.

Also, Plaintiff's brief repeatedly emphasizes that she was represented by a lay representative at the administrative hearing and was unrepresented at the Appeals Council level. The Seventh Circuit has suggested that inadequate lay representation may weigh in favor of finding good cause, but is not dispositive of the issue. Sears v. Bowen, 840 F.2d 394, 400 (7th Cir. 1988).   Nonetheless, even if inadequate representation were to support a showing of good cause, Plaintiff must still demonstrate that this evidence is material in order to warrant a remand under sentence six of 42 U.S.C. § 405(g).

To satisfy the statutory requirement of "materiality," a proponent of new evidence must demonstrate a "reasonable probability" that the Commissioner would have reached a different conclusion on the issue of disability if presented with the new evidence.  *Willis*, 727 F.2d at 554. Evidence that a condition has subsequently deteriorated is insufficient grounds for remand under 42 U.S.C. § 405(g). *Sizemore v. Sec'y of Health and Human Services* 865 F.2d 709, 712 (6th Cir. 1988). The burden to demonstrate that remand is appropriate under 42 U.S.C. § 405(g) rests with the party seeking remand. *Willis*, 727 F.2d 551, 554 (6th Cir. 1984); *Longworth v. Comm'r Soc. Sec.* 402 F.3d 591 (6th Cir. 2005).

Plaintiff contends that there is a reasonable probability that a different decision would have been reached if the ALJ had considered "new" evidence. This evidence includes a report made in conjunction with an MRI of Plaintiff's cervical spine and additional treating notes of Dr. Periyanayagam, who performed Plaintiff's cervical fusion. The ALJ, however, did address the MRI taken in July of 2005 and acknowledged that Plaintiff would undergo surgery. (Tr. 22). The ALJ went on to opine that "there is no indication that the condition would last 12 months. Moreover, it is likely the claimant's condition could improve after surgery." (Tr. 24). In fact, it appears Plaintiff did improve

after her surgery. Dr. Periyanayagam noted that Plaintiff tolerated her surgery well and that Plaintiff did very well postoperatively and did not have any neck or arm pain. (Docket Entry 18-2, Page 7-9). Further, subsequent follow-up examinations demonstrated that Plaintiff's neck movements were not restricted or painful, that there was good placement of screws and plates, and that her alignment appeared normal. (Docket Entry 18-2, Pages 10- 11). Plaintiff's "new"evidence makes no further reference of any other disabling condition.

Inasmuch as the results of the MRI were, in fact, considered by the ALJ before issuing his opinion, the information conveyed in the MRI report submitted with Plaintiff's brief does not seem to present any "new" or material information for the purposes of a sentence six remand. The other new evidence presented, Dr. Periyanayagam's exam notes, appears substantially in line with the ALJ's finding. There is no indication that Plaintiff's condition stemming from her surgery would last over 12 months and Dr. Periyanayagam opined it was likely that Plaintiff would recover from the surgery. (Tr. 24). Based on Dr. Periyanayagam's notes, the surgery was successful in alleviating Plaintiff's neck pain and no further complications arose from the procedure. (Docket Entry 18-2, Pages 7-11). It is not reasonably probable that the ALJ or the AC would have reached a different conclusion as to Plaintiff's disability if presented with the new evidence. Consequently, the new evidence submitted by Plaintiff is not material under Sentence Six of 42 U.S.C. § 405(g).

Thus, regardless of whether there is good cause for the failure to present the newly submitted evidence, none of the evidence meets the statutory requirement of materiality and remand under Sentence Six of 42 U.S.C. § 405(g) is not appropriate.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that Plaintiff's motion for judgment be DENIED, and that the decision of the Commissioner to be AFFIRMED.  Further, the Magistrate Judge Recommends that Plaintiff's request for remand pursuant to Sentence Six of 42 U.S.C. § 405(g) be DENIED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court.  Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this __6th_____ day of  June, 2007.

—

/S/ Joe B. Brown

JOE B. BROWN

United States Magistrate Judge